UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                                        Case No. 05-34121
                                                             Chapter 7
DENNIS MONTGOMERY,

      Debtor.

CUMIS INSURANCE SOCIETY,
                                                             Adv. Pro. No. 06-3016
      Plaintiff,

  v.

DENNIS MONTGOMERY,

      Defendant.

## MEMORANDUM DECISION

This Adversary Proceeding is before the Court upon the motion of Plaintiff CUMIS Insurance Society to amend its complaint. (Docs. 24, 35). For the reasons set forth below, the motion is DENIED.

## I. FACTS

On January 18, 2006, Plaintiff CUMIS Insurance Society filed a complaint seeking a determination that an indebtedness allegedly owed by the Debtor should be excepted from the Debtor's discharge.[1] CUMIS alleges that the indebtedness is not dischargeable, citing 11 U.S.C. § 523(a)(2)(A) and (B). In the complaint, CUMIS alleges, in general terms, that the Debtor committed a fraud. The Court held a scheduling conference on April 11, 2006. The Scheduling

---

[1] The deadline for filing complaints for a determination of dischargeability pursuant to 11 U.S.C. § 523(c), was January 17, 2007. (Case No. 05-34121, Doc. 4); see also, Rule 4007(c), FED. R. BANKR. P.

Order subsequently entered provided that "Counsel for the parties shall exchange and file with the court by September 1, 2006, the pretrial disclosures required by Rule 7026(a)(3), FED. R. BANKR. P. Exhibits, depositions, and testimony of witnesses not so disclosed shall not be admitted into evidence at the trial except for good cause shown." (Doc. 10). CUMIS did not file a list of exhibits or a list of witnesses.

The Court conducted a bench trial on March 26, 2007. The Court took the matter under advisement and announced its decision on April 24, 2007, making oral findings of fact and conclusions of law. The Court held for the Defendant for two reasons. First, CUMIS failed to prove that it was owed any money. Second, CUMIS cast its claim in terms of § 523(a)(2)(A) and (B) (excepting from discharge debts arising from fraud or a false financial statement), but at trial it abandoned its fraud allegations, arguing instead that it was entitled to judgment pursuant to § 523(a)(7) (excepting from discharge debts for fines penalties or forfeitures payable to or for the benefit of a governmental unit, and not compensation for actual compensatory loss). At trial, CUMIS failed to prove both that it was owed any money and that the Debtor had committed a fraud.

The underlying indebtedness arose out of a sequence of events in which a check was deposited in Montgomery's checking account at Max Federal Credit Union. The check was in the amount of $18,500.00 and was drawn on the account of Spencer Yachts, Inc., of Manns Harbor, North Carolina. (Pl. Ex. 1). Traci Madderra of Max FCU testified that a five-day hold was placed on the check, meaning that the funds could not be withdrawn for that period of time. Once the hold was lifted, Montgomery withdrew the funds. The Spencer Yachts check was drawn on

The East Carolina Bank of Manteo, North Carolina. Apparently, the check was dishonored and Max was left holding the bag.

No explanation was offered at trial as to how this state of affairs came about. The purpose of the five-day hold was to prevent a situation such as this from happening. The Uniform Commercial Code requires a payor bank to send notice of dishonor before its midnight deadline. See ALA. CODE § 7-4-301.[2] This raises a question as to whether The East Carolina Bank gave timely notice of dishonor. If it did not, it would appear that Max, or CUMIS as its subrogee, would have a cause of action against the payor bank. On the other hand, if Max timely received notice of dishonor, question of its bone fides may be raised. That is, if Max received timely notice of dishonor but nevertheless paid over funds knowing that the check had been dishonored, it cannot subsequently contend that it was defrauded. Montgomery is not a lawyer and raised his defense imperfectly; nevertheless, Montgomery raised this question at trial. CUMIS made no effort to respond to Montgomery's question as to how this loss came about, notwithstanding the five-day hold.

No representative from CUMIS appeared at trial. The only testimony offered to the effect that CUMIS may have been owed money at one time, was that of Traci Madderri who testified that Max had suffered a loss as a result of the dishonored check, but it was made whole when it made a claim on the bond issued by CUMIS. Madderri had no knowledge of what may have happened subsequent to the time Max was reimbursed under its bond. Whether CUMIS made

---

[2] Whether this transaction is governed by the laws of Alabama, North Carolina, or some other place need not be determined here.

Case 06-03016    Doc 36    Filed 06/14/07    Entered 06/14/07 11:36:30    Desc Main
Document      Page 3 of 7

any efforts to recover its loss from East Carolina Bank for failure to timely dishonor the check, or from Spencer Yachts for dishonoring its check was not disclosed at trial.

Montgomery testified that the check was deposited in his account, with most of the money disbursed to others to accommodate an acquaintance. Montgomery further testified that he pleaded guilty to a theft charge in the Montgomery County Circuit Court, because he had been promised that he would not get any jail time. In fact, Montgomery was sentenced to fifteen years in the penitentiary and ordered to pay restitution. (Pl. Ex. 2). Montgomery apparently served about one year of his fifteen year sentence. Montgomery claims that he is innocent, having been duped by a dishonest acquaintance, an incompetent criminal defense lawyer, a crooked prosecutor, and an unfeeling Circuit Judge.

Montgomery testified that he wrote the Circuit Court repeatedly about his conviction, complaining that his plea had been unlawfully coerced and that the Circuit Judge erred in failing to permit him to withdraw his plea. The Docket Sheet from the criminal case contains an entry dated 1 Feb. 05, "Summarily Dismissed [Defendant's] Petition for Relief from Conviction or Sentence," suggesting that the Circuit Court so construed Montgomery's letters and denied relief. (Pl. Ex. 2). Nevertheless, Montgomery was released later in 2005, for reasons not disclosed on the Docket Sheet. Perhaps Montgomery was released as a result of his letter writing campaign, or maybe it was to relieve prison overcrowding, or perhaps there was some other reason which was not revealed at trial. CUMIS only proved the fact of Montgomery's conviction. It did not attempt to explain how an individual sentenced to fifteen years in prison was walking the streets and filing bankruptcy only a year later. While there is no direct evidence that Montgomery's

sentenced was reduced, the numbers simply do not add up.[3] If CUMIS had pleaded a § 523(a)(7) claim, Montgomery would have had reason to research the matter further and could have produced documents showing why he was released and perhaps undercut CUMIS's § 523(a)(7) claim. It is difficult, if not impossible, to rebut a claim which is not made until after trial. For this reason, Montgomery was prejudiced by CUMIS's failure to provide timely notice of its intent to amend its complaint.

## II. CONCLUSIONS OF LAW

This Court has jurisdiction to hear this Adversary Proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding. 28 U.S.C. § 157(b)(2)(I). Accordingly, the judgment entered by this Court on April 24, 2007, was a final judgment. (Doc. 21). CUMIS now seeks to amend its complaint, after entry of judgment. (Doc. 24). Montgomery opposes the motion. (Doc. 25).

CUMIS seeks to amend its complaint, citing Rule 7015, FED. R. BANKR. P. This rule provides, in part, as follows:

> (b) Amendments to Conform to the Evidence. When issues not raised by the pleadings are tried by the express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.

Id.

The Court's task is to determine whether Montgomery either expressly or impliedly consented to the amendment sought by CUMIS. There is nothing in the record which indicates

---

[3] The dearth of evidence on this subject may be attributable to CUMIS's failure to timely move to amend its complaint. Montgomery was put on notice to defend a § 523(a)(2) fraud case, which he did successfully. Had he been timely notified that CUMIS was making a claim pursuant to § 523(a)(7), he may have been able to defeat that claim as well. Indeed, whether CUMIS even has standing to bring a § 523(a)(7) action as it was not a party to the criminal proceeding is a question which this Court need not reach.

-5-

that Montgomery expressly consented to the amendment. The question then becomes whether Montgomery gave implied consent to the amendment.

CUMIS argues that because Montgomery did not expressly object at trial, he consented to the amendment. (Doc. 35). The Court disagrees. If one can say nothing else about Montgomery, he appeared in Court, offered testimony–as it was–and defended himself with all the energy he could muster. To be sure, Montgomery is not a trained lawyer, and his efforts may have been clumsy at times. However, the same could be said of CUMIS. First, it filed a § 523(a)(2) complaint, which was not timely. Second, it did not file a list of witnesses and exhibits as required by the Pretrial Order. Had it done so, it may have arguably put Montgomery on notice that he would not be defending a fraud trial. Third, CUMIS did not provide a witness who could have given testimony as to the existence of the debt. Fourth, CUMIS did not move to amend its complaint until after entry of judgment. It strikes the Court as incongruous for CUMIS to insist on letter perfect practice on the part of Montgomery, while forgiving itself any number of missteps. As stated above, this was an exceedingly ragged trial, and this Court will not hold Montgomery, a pro se litigant, to a higher standard than it would for CUMIS, which was represented by counsel. With every breath that he as drawn, Montgomery has opposed the efforts of CUMIS to obtain a determination that the debt is excepted from discharge. Having considered all of the evidence, the motion filed by CUMIS, and the briefs filed by the parties, the Court concludes that Montgomery has not consented to the amendment by implication and for that reason, the motion to amend is denied. In the alternative, as the Court has found that Montgomery was prejudiced by CUMIS's failure to timely amend its pleadings, the motion to amend is denied on the grounds that Montgomery has suffered prejudice.

It is well established that the decision to grant leave to amend a complaint is within the "sound discretion of the trial court." Jameson v. The Arrow Co., 75 F.3d 1528, 1534 (11th Cir. 1996). Furthermore, motions to amend are reviewed on appeal under an abuse of discretion standard. See, e.g., Maynard v. Bd. of Regents, 342 F.3d 1281, 1286 (11th Cir. 2003). It is also well established that exception's to the debtor's discharge under 11 U.S.C. § 523 are strictly construed in favor of the debtor. United States v. Fretz (In re Fretz), 244 F.3d 1323, 1327 (11th Cir. 2001). The party seeking to have a debt deemed nondischargeable bears the burden of proof, and the standard of proof is beyond a preponderance of the evidence. Tip Top Tree Experts, LLC v. Corley (In re Corley), 341 B.R. 792, 796 (Bankr. M.D. Fla. 2006).

### III. CONCLUSION

The motion to amend the pleadings filed by CUMIS is denied, because Montgomery did not expressly, or by implication, consent to the amendment. In the alternative, the motion is denied as Montgomery was prejudiced by CUMIS's failure to timely amend its complaint. The Court will enter a separate order in accordance with Rule 9021, FED. R. BANKR. P.

Done this the 14th day of June, 2007.

/s/ William R. Sawyer
United States Bankruptcy Judge